# GEORGE T. CURTIS *vs.* BENJAMIN B. MUSSEY & another.

Want of actual intent to vilify is no excuse for a libel.

The fact that the person libelled has failed to prosecute for a previous publication of a libel is no bar to an action for a new publication thereof.

Publication of a libel is not excused by the publisher's ignorance that it contains libellous matter.

A discourse, delivered pending the canvass for an election of a member of congress, upon the opinion and decision of a commissioner of the circuit court of the United States, remanding a fugitive from service, under the fugitive slave law, and upon the expediency and constitutionality of such a law, and containing passages accusing the commissioner of "legal Jesuitism," of prejudice and want of feeling, of "a partisan and ignoble act," and comparing him to Pilate and Judas, is not a privileged communication.

Curtis *v.* Mussey & another.

ACTION OF TORT for a libel. The plaintiff in his declaration alleged that he was a commissioner of the circuit court of the United States for the district of Massachusetts; and on the 11th of April 1851, in the performance of his duty as such commissioner, heard and determined a matter then pending before him, wherein Thomas Sims was claimed under and by virtue of the laws of the United States as a fugitive from labor and service from and out of the State of Georgia, and delivered an opinion in said matter, and granted a certificate authorizing the removal of Sims to the State of Georgia; " and the defendants, afterwards, with intent to vilify the plaintiff, and to bring him into hatred, contempt and ridicule, both as a magistrate and as a man, to impute official misconduct to him, and to cause it to be believed that the plaintiff did knowingly and wilfully decide and determine said matter falsely and contrary to law, and did wilfully grant said certificate, knowing the same ought to have been refused by him, did publish in a certain book, a title page whereof is in the words and figures following: ' Slavery. Letters and Speeches by Horace Mann, the first Secretary of the Massachusetts Board of Education. Boston: Published by B. B. Mussey & Co. 1851 ; ' a certain false, malicious libel concerning the plaintiff, purporting to be a discourse delivered to an audience, in a part of which said libel there was and is contained the following passage." The declaration then set forth successively several passages from the alleged libel, which are copied in the margin.*

---

* " This question has lately been discussed in our own vicinity. The liberty of a resident of Massachusetts, a man every way entitled to a jury trial by our constitution and laws as much as you or I, has been sacrificed by a United States commissioner in the city of Boston.[1] He has decided in favor of the law. You would naturally suppose that, in order to shelter himself from the odium of such a decision, he would put all personal and all collateral resources into requisition to make the case as plausible as ingenuity can make it. It is said, too, that Mr. Webster and Mr. Webster's friends, and the commissioner's friends, have contributed of their strength to help the debility of the case. While the

' 1 Mr. George T. Curtis.

The answer admitted that the plaintiff was a commissioner as alleged;"and that he, on the 11th of April 1851, claiming to

cause was pending before him, one of the points involved in it was brought before the supreme court of Massachusetts, and also before the circuit court of the United States. The commissioner adjourned the case over, after all the arguments of counsel were in. He thereby gave himself an opportunity for preparation and consultation."

" It may be said that these are legal and constitutional questions, and therefore that unprofessional men cannot understand them. But most, if not all the points which I shall bring to your attention are matters of intuition; questions wholly within the jurisdiction of plain common sense, and such therefore as can be decided by you as well as by lawyers or judges. And if I can convince you of the inconclusiveness of some parts of this decision, of the legal Jesuitism of other parts, and of the selfcontradiction that pervades the whole, you will not hesitate to set it aside, not as null and void merely, but as discreditable to the profession of the law, and dishonorable to the State of Massachusetts."

" Badly heroic as he was, *in fact*, in exercising jurisdiction over a human being, and delivering him over into hopeless and irremediable bondage, he was not mad enough to arrogate, *in terms*, the prerogative of '*judicial power.*' "

" An unprincipled majority of congress has only to pass a law that any man may be imprisoned or hanged on an executive warrant, and that the hireling marshal or commissioner shall suffer no 'molestation by any process issued by any court, judge, magistrate or other person whomsoever,' and despotic power will be enthroned here as effectually as it ever was in England in the bloody days of the Stuarts. Jeffries was at least a judge, though he acted like a commissioner."

" But again; this reply of the commissioner, that the counsel said nothing about the second point, (when he had acknowledged the validity of the first, which was fatal,) is not merely an evasion; it is founded upon a false meaning attributed by him to the second point."

" But because that court had said, years before, that it belongs to congress to prescribe the mode of recovering fugitive slaves, therefore, says the commissioner, if congress should vest this power in commissioners, (and in slave traders and pirates just as well,) it would be valid."

" This sudden transmigration from a judge to an executioner, from one who acknowledged that the delivery of an alleged fugitive is an act of 'judicial power,' to one who holds that it is NOT '*any thing more* than a summary ministerial proceeding,' may suit a disciple of Pythagoras, or the priests of the Hindoo religion, but it ill becomes an expounder of American jurisprudence."

" In both these constitutions, the three functions of government, namely, to legislate, to adjudicate, and to execute, are expressly recognized; and the *whole*

Curtis *v.* Mussey & another.

act in the due performance of his duty as such a commissioner did hear and determine the matter of Sims claimed as a fugitive

of their distinctive powers are lodged in separate departments. No mention is made of any hybrid or mongrel class, half judicial and half executive, or half ministerial and half judicial, or compounded of aliquot parts of each. Such an officer, under either constitution, would be a monster; he would hold the same relation to their legitimate functionaries that Caliban does to the human race; and if created for executing the Fugitive Slave Law, that half devil and half beast would be the fitting prototype.

" The commissioner professes to have found a class of cases, both under our state and national constitutions, where powers, 'judicial in their nature, and special in their purpose, may be confided to the determination of officers who are not judges.' On this point he has expended himself. Here lay the pressure and travail of his case. Seeing that, in deciding the great issue before him, 'slave or free,' he was exercising judicial power, and in ordering an armed force to convey the victim to his house of bondage, he was exercising ministerial or executive power, (thus blending the functions which both constitutions have separated,) the commissioner felt that he must find some analogy or some precedent to cover up this obvious violation of all principle, or his argument was in ruins."

" Indeed the whole argument of the commissioner on this point is but a play upon words. It is only a trick of verbal legerdemain. The premises he starts with are unknown to the Constitution, and the conclusion he comes to is abhorrent to humanity."

" But the selfconstituted judge was inexorable. Though he knew that, according to the terms of the Fugitive Law, there was no escape from his decision; though he knew that his certificate was to protect the manhunter from all ' molestation by any process issued by any. court, judge, magistrate, or other person whomsoever,' yet, like Pilate, he washes his hands and says, ' I am innocent of this man's blood, see ye to it '; for my decision is not ' final.' "

" It not only decides that Sims is a slave, and that he shall be sent to Georgia; but it sends *familiars,* like those which once disgraced even the purlieus of the Inquisition, to see that the devilish deed is done.

" The whole argument of the commissioner, that this act of his is not *final,* is founded on a quibble—on the use of the legal word ' final,' as though it were synonymous with the popular word *eternal* or *perpetual.*"

" But to send a man to be worked to death in five years on a sugar plantation, where his being taught to read the gospel of Jesus Christ is a felony—this is ' special and limited,' and so may be done by any hireling commissioner who will do what Judas did for one third part of his silver pieces.

" Fellowcitizens, I submit to any man, clerical, legal, or lay, who is capable of

Curtis *v.* Mussey & another.

from service and labor, and did deliver an opinion and grant a certificate therein. But the answer alleged that said proceedings

---

appreciating moral distinctions, whether this whole doctrine, about delivering a man up as a slave, and putting him bodily into the hands of the claimant, and thrusting him into a slave jurisdiction, under the pretext that it is done only for *the special and limited purpose of removal*, be not atrocious. It is more like a forgery than an argument."

" In the absence of all decent materials for an argument, the commissioner resorts to that ten times exploded position, that there is an analogy between fugitives from justice and fugitives from service. Where could he find a bandage of prejudice thick enough to blind him to the distinction, that the condition of delivering up the former is that he be *charged* with crime, while the condition of delivering up the latter is that he be *held to* labor, and that he *owes* service."

" A man who will not *see* such a distinction as this, would excite no pity should he be made to *feel* it."

" There are two remarks thrown out in the course of the commissioner's opinion, so shocking to every feeling of humanity, that any one, in commenting upon them, may well be excused for passing from the language of argument to that of emotion."

" And when the counsel of Sims urged upon the commissioner the enormity of this outrage against all principle, what was his reply ? It was this, and it makes a man's blood run cold to read it: Sims's absence from Georgia, ' so that he could not be served with notice, if he was entitled to it, was in his own wrong, and he cannot now complain that he had no opportunity to cross-examine the witnesses.'

" I appeal to all history to prove, that no judge who ever sat upon a bench where the common law was recognized and administered, however corrupt he may have been, ever advanced a more atrocious doctrine."

" And yet the commissioner *makes proof out of nothing*, that Sims escaped from slavery, and then, because of this nothing-made proof, he inculpates him with being absent ' in his own wrong.' "

" And because this mother's love had not been all extinguished, the commissioner says that his sending a human being into the abyss of bondage, on evidence that an intelligent barbarian would reject, ' certainly disarms the case of any unpleasant features.' But I shall not expostulate with the commissioner. A man must have a heart before he can feel, as he must have eyes before he can see.

' O, who can paint a sunbeam to the blind,
Or make him feel a shadow with his mind ?' "

" In saying what I have said, I disclaim all personal ill will or discourtesy towards that magistrate. Even should I appear not to have succeeded in sup-

Curtis *v.* Mussey & another.

were had under the act of congress of September 18th 1850, known as " the fugitive slave law," and that the acts of the plaintiff therein were done by virtue of the authority conferred upon him as such commissioner by said law, and in the belief, on his part, that they were done in the due performance of his duty as such commissioner; but that said law, and the authority thereby conferred upon the plaintiff, were contrary to the Constitution of the United States, and in violation of its letter and spirit, and illegal and void.

The answer further admitted that the defendants did, after said proceedings in the case of Sims, publish a book, the title page of which was as set forth in the declaration; and that in that book was contained a discourse, purporting to be a speech on the fugitive slave law, delivered by Horace Mann, at Lancaster in this commonwealth, on the 19th of May 1851, pending the canvass for a member of congress for the fourth congressional district, in which discourse were the several passages set forth in the declaration. The remainder of the answer was as follows:

" But these defendants, upon their personal knowledge, deny that they published said discourse with intent to vilify the plaintiff, or to bring him into hatred, contempt and ridicule, either as a magistrate, or as a man, or to impute official misconduct to him, and to cause it to be believed that the plaintiff did knowingly and wilfully decide and determine said matter falsely and contrary to law, and did wilfully grant said certificate, knowing the same ought to have been refused by him. On the contrary, they say that said discourse, alleged in said plaintiff's declaration to be a libel upon him, was published, long before the publication by the defendants, referred to in

---

pressing my own feelings, I certainly cannot wound his more than he has wounded mine, and those I believe of nine tenths of all who have ever read his opinion; not by a thousand fold as much as he has wounded the law, whose servant he is, or the fair fame of Massachusetts, of which he is a citizen; not so much as his decision will wound the hearts of an intelligent posterity, who shall look back upon it as a partizan and an ignoble act, not to be remembered without a sigh."

Curtis *v.* Mussey & another.

said declaration, in various public journals, and that with the knowledge of the plaintiff, and that said plaintiff never commenced any proceedings against the author thereof, or the persons connected with said prior publication, nor, so far as these defendants know, made any complaint that the same were libellous. And these defendants say that they are booksellers and publishers, and that, as such, the said Mann brought to them certain letters and speeches of his for publication, and that these defendants, in the exercise of their said lawful calling, published the same, among which was the said discourse alleged to be libellous by the plaintiff in his said declaration, and that they form the book referred to in said declaration; but they published the said discourse without any knowledge on their part that the same, or any part thereof, contained libellous matter, and without any intention to injure the plaintiff, as alleged in said declaration.

" And these defendants, further answering, deny, upon information and belief, that said discourse, containing said passages set forth in said declaration, is a false, malicious libel concerning the plaintiff, or that the same contains any libellous matter concerning the plaintiff.

" And these defendants say that the said law, called the fugitive slave law, is a law deeply affecting the interests of the citizens of this commonwealth and of the United States; that, at the time of and after its passage, the expediency and constitutionality of its various provisions were subjects much canvassed among said citizens, and that it was objected by the opponents of said law that the same was contrary to, and in violation of the Constitution of the United States, in various of its features; but especially because it conferred upon the commissioners of the United States courts a power and authority which was judicial in its nature, and which by the said constitution could not be exercised by such commissioners; and they further say, that, in the opinion delivered by said plaintiff, in the case of said Sims, as alleged in his said declaration, the plaintiff took occasion to consider and examine at length these objections to the constitutionality of said law, which opinion is in the lan-

guage following, viz : " [That opinion was then set forth at length in the answer.]

" And the defendants further say, that said opinion was publicly delivered by the plaintiff at said hearing in the case of said Sims, and was published, with the knowledge and consent of said plaintiff, in various of the public journals in the city of Boston, in said county of Suffolk.

" And these defendants further say, that the objects and purposes of said law, and the means and instrumentalities therein provided for the carrying out and effectuating such objects and purposes, and the acts of any officer thereunder, and the decision of any such officer in regard to the constitutionality of said law, and its purport and object, are matters of public importance, affecting the rights and duties of the citizens of the United States, and are subject to be examined and discussed by them.

" And the defendants further say, that the object and purport of said discourse is the consideration and examination of the grounds taken in favor of the constitutionality of said law, and that said opinion is referred to in said discourse as an opinion delivered in favor of said fugitive slave law, and delivered under such circumstances as to warrant the presumption that it contained the best reasons and the most cogent arguments which could be adduced in favor of said law ; that, in said discourse, the positions taken by said plaintiff in said opinion, in regard to the constitutionality of said law, and of his duties thereunder, are examined and commented upon. And these defendants aver, that all reference to, and comments upon, the proceedings of the plaintiff, and the course pursued by him in said case of said Sims, and the opinion delivered by him therein, made in said discourse, were competent and justifiable in law to be made."

The plaintiff demurred to the answer, " for the reason that the same does not state a legal defence to his declaration, and that the facts therein stated do not answer his action." *Fletcher*, J., before whom a hearing was had at November term 1852, overruled the demurrer and reserved and reported the case to the full

court. The arguments and decision upon the demurrer were made at March term 1854.

*R. Choate & E. D. Sohier,* for the plaintiff. Any published writing, which imputes misconduct or want of principle to a man in an office of profit or trust, or has a natural tendency to occasion the loss of such office, or to induce a bad opinion to be had of him, or to make him contemptible or ridiculous, is a libel. *White* v. *Nicholls,* 3 How. 285, 286. *Riggs* v. *Denniston,* 3 Johns. Cas. 198. 1 Stark. Sland. 118–124. That the passages complained of come within these definitions, is sufficiently shown by their accusing the plaintiff of want of feeling, of prejudice, of " verbal legerdemain," of " legal Jesuitism," and " making proof out of nothing ; " of giving an opinion, " discreditable to the profession of the law, and dishonorable to the Commonwealth of Massachusetts," " more like a forgery than an argument," " a partisan and· ignoble act," and comparing him to Pilate and to Judas.

The published matters complained of being plain, unambiguous and unequivocal, it is a question of law for the court, (which is duly raised by this demurrer,) whether they are libellous or not. *Turrill* v. *Dolloway,* 17 Wend. 426. *Fry* v. *Bennett,* 5 Sandf. 65. *Snyder* v. *Andrews,* 6 Barb. 43. *Weed* v. *Foster,* 11 Barb. 203. *Tuson* v. *Evans,* 12 Ad. & El. 733. *Commonwealth* v. *Holmes,* 17 Mass. 336. *Commonwealth* v. *Kneeland,* 20 Pick. 232.

The published matters being libellous on their face, malice is inferred in law, unless the publication was privileged. *White* v. *Nicholls,* 3 How. 266. And the defendants' want of actual intent to libel, and ignorance that the publication was libellous, are no excuse ; especially as they do not aver their ignorance of the contents of the publication, or explain their ignorance of the legal effect thereof. *Watson* v. *Moore,* 2 Cush. 133. *Bodwell* v. *Swan,* 3 Pick. 376. The averment that the publication is not libellous is an averment of a mere inference of law, which does not affect the right and duty of the court to judge of the legal effect of the words.

The answer does not set forth any facts which, if true, would

23 *

rebut the legal presumption of malice, and bring this publication under the head of privileged communications. The occasion of the canvass for member of congress furnished no privilege, even to the author of the discourse, for libelling the plaintiff in his character and office ; as it is not alleged that the plaintiff was a candidate for any office in that district. Or, if the occasion gave the author the right to discuss the plaintiff's arguments, it conferred no privilege to assail his character and hold him up to contempt, either in his private or official capacity ; and the passages complained of are not argumentative, but their plain and unequivocal meaning and intention is to hold the plaintiff and the office of commissioner up to odium and contempt, so as to prevent and intimidate the plaintiff from acting therein, or else cause it to be believed that the plaintiff acted in said office wilfully, illegally and unjustly, and so procure his discharge therefrom.

Even if the answer sets forth facts which would constitute a privilege on the part of the author, it contains none which justify the defendants in their publication.

*S. Bartlett & D. Thaxter*, for the defendants. The answer admits the office of the plaintiff, and his acts in it ; admits the publication of the matter alleged to be libellous ; but denies that the matter published is a libel ; denies that the defendants, in publishing it, had any knowledge that it was libellous, or any intention to injure the plaintiff ; and alleges that any references to the plaintiff, in the discourse published, relate to his acts and doings as commissioner, and as such are privileged. The demurrer to this answer cannot stand, unless the issues thus raised present pure questions of law, exclusively for the consideration of the court, and on which it would not be competent to offer evidence *dehors* the record ; and unless the court affirm the truth of those allegations of the declaration, which are denied in the answer.

The defendants have a right to go to the jury upon the question, whether the matter published is a libel concerning the plaintiff, even if the question were to be decided upon the record, without other evidence. It is for the court to define

what constitutes a libel; it is for the jury to say whether the particular publication comes within the definition. *Parmiter* v. *Coupland*, 6 M. & W. 105. *Baylis* v. *Lawrence*, 11 Ad. & El. 920. *Chalmers* v. *Payne*, 2 Cr., M. & R. 158. *Blagg* v. *Sturt*, 10 Ad. & El. N. R. 899, 906, 908. *Fisher* v. *Clement*, 10 B. & C. 472. 2 Greenl. Ev. § 411. *Usher* v. *Severance*, 20 Maine, 17. *Goodrich* v. *Davis*, 11 Met. 484. *Miller* v. *Butler*, 6 Cush. 71. *Seven Bishops' case*, 12 Howell's State Trials, 425, 426. The only opposing authorities are cases where the language was clear and direct, free from any ambiguity. But where, as in this case, the language is used by way of reference or allusion, whether its application is to be decided upon the face of the publication, or by reference to other facts averred in the declaration, or by the aid of an innuendo, the question, whether the language has the application or meaning charged, must be submitted to the jury. *Van Vechten* v. *Hopkins*, 5 Johns. 211. *Rex* v. *Horne*, Cowp. 680, 683, 685. *The King* v. *Shipley*, 4 Doug. 72, 85, 86, and 3 T. R. 428, *note*. 2 Greenl. Ev. § 417. So if the language, as in this case, be not clear, but fairly open to criticism, its meaning will be submitted to a jury. *Snyder* v. *Andrews*, 6 Barb. 43. *Ex parte Baily*, 2 Cow. 482. *Goodrich* v. *Woolcott*, 3 Cow. 231. *Dexter* v. *Taber*, 12 Johns. 240. *M'Kinly* v. *Rob*, 20 Johns. 356. *The King* v. *Shipley*, 4 Doug. 130, 164. *Rex* v. *Horne*, Cowp. 683. *Rex* v. *Woodfall*, 5 Bur. 2666, 2669. *Roberts* v. *Camden*, 9 East, 96. *Oldham* v. *Peake*, 2 W. Bl. 962, and Cowp. 278.

Under this issue, the defendants have a right to introduce evidence, or at least to read the whole discourse, to show that the matter recited in the declaration is not a libel concerning the plaintiff, and does not have the meaning and application alleged, and to go to the jury upon that question. 1 Stark. Sland. 453–455. 2 Greenl. Ev. § 417. *The King* v. *Shipley*, 4 Doug. 141, 142, 144, and 3 T. R. 428, *note*. *Rex* v. *Bear*, 2 Salk. 417. *Cooke* v. *Hughes*, Ry. & Mood. 112. *Mullett* v. *Hulton*, 4 Esp. R. 248. *Weaver* v. *Lloyd*, 1 Car. & P. 295. *Rex* v. *Lambert*, 2 Campb. 398. *Snyder* v. *Andrews*, 6 Barb. 50.

The defendants having denied any knowledge that the pub

lication was libellous, and denied any intention to injure or malign the plaintiff, and having averred that the publication is privileged ; and the plaintiff having demurred to this answer; either the defendants' good faith and want of malice are thus admitted ; or else the question of malice is to be passed upon by the jury ; and in either case, the demurrer cannot stand.

Independently of any question of privilege, the defendants' denial of any knowledge that the publication was libellous presents an issue of fact, which, if found in their favor, is fatal to the plaintiff's case. *Dexter* v. *Spear,* 4 Mason, 115. *Smith* v. *Ashley,* 11 Met. 367.

But this is a privileged publication, and so the presumption of malice, which might otherwise arise from the language used, is rebutted. The demurrer admits the allegation of the answer that any reference or allusion to the plaintiff in the discourse applies only to his acts and decision as a commissioner in the enforcement of a law of the United States, of public importance, affecting the interests of the citizens thereof. Such acts and decisions are matters fit and proper to be reviewed, discussed and commented upon by any citizen ; and any such discussion, if conducted fairly and in good faith, without malice, is privileged. *Gathercole* v. *Miall,* 15 M. & W. 328, 332, 338 342. *Parmiter* v. *Coupland,* 6 M. & W. 105. If the want of malice is not to be deemed to be admitted by the demurrer, still, when the statements alleged to be libellous are of such a nature that, if fairly and honestly made, they are privileged, the burden of proving malice is on the plaintiff, and the question of malice, to wit, whether the statements were made honestly, from proper motives, and for a proper purpose and object, is to be submitted to the jury. *Somerville* v. *Hawkins,* 10 C. B. 589, 590. *Fountain* v. *Boodle,* 3 Ad. & El. N. R. 5. *Blackburn* v. *Blackburn,* 4 Bing. 395. *Wright* v. *Woodgate,* 2 Cr., M. & R. 577, 578. *Blagg* v. *Sturt,* 10 Ad. & El. N. R. 899. *Fairman* v. *Ives,* 5 B. & Ald. 646. *Robinson* v. *May,* 2 Smith, 3. *White* v. *Nicholls,* 3 How. 292. *Cooper* v. *Stone,* 24 Wend. 442. 1 Stark. Sland. 454, 455.

THE COURT held, that the want of actual intent to vilify

Curtis *v.* Mussey & another.

or libel the plaintiff rendered the publication no less a libel, if such was the natural effect of the words published; that the prior publication and the omission of the plaintiff to prosecute therefor were no defence to this suit, but could, at most, only affect the question of damages; that the defendants were bound to know whether the publication contained libellous matter; that there were passages in the publication, which appeared on their face to be libellous, such as the charge of "legal Jesuitism," the comparison to Pilate and Judas, the charges of prejudice and want of feeling, and the assertion that the decision of the plaintiff as commissioner was a partisan and ignoble act; that the statements complained of were not privileged communications, and, as discussions upon a matter of public interest, did not appear to be justified, because they charged the plaintiff with corrupt and improper motives, and because the answer did not aver their truth; that the answer therefore, supposing all the matters contained in it to be true, as admitted by the demurrer, did not constitute a complete defence and legal bar to the plaintiff's action; but that, as there were still questions upon the declaration and answer in issue between the parties, the case must stand for further proceedings.

By inadvertence, an entry was made on the docket, sustaining the demurrer. The defendants thereupon moved that the cause be submitted to a jury, and for leave to amend their answer, if necessary. The case was continued for several terms, and, after the death of the defendant Mussey, and before any further action of the court, was settled by agreement of parties, by entering judgment for the plaintiff for five dollars, with costs to the time of the decision upon the demurrer.